UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 22, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:  *William T. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
     Civil No. 24-1468-CDA

Dear Counsel:

On May 20, 2024, Plaintiff William T. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7) and the parties' briefs (ECFs 11, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 11, 2020, alleging a disability onset of January 15, 2020. Tr. 20, 262-68. Plaintiff's claims were denied initially and on reconsideration. Tr. 75-100. On March 15, 2023, an Administrative Law Judge ("ALJ") held a hearing, but the hearing was postponed so that Plaintiff had time to obtain legal representation. Tr. 65-74. The ALJ held a second hearing on June 14, 2023, during which Plaintiff chose to appear unrepresented by counsel. Tr. 36-64. Following the hearing, on September 6, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 17-29. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on May 20, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*William T. v. Bisignano*
Civil No. 24-1468-CDA
July 22, 2025
Page 2

## II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "engaged in substantial gainful activity for part of the period after the alleged onset date of January 15, 2020, but there exists a valid basis for denying [Plaintiff's] application for the entire time period at issue," thereby proceeding with the five-step sequential evaluation process. Tr. 23. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "lumbar degenerative disc disease with right lower extremity radiculopathy; right hip osteoarthritis; and prostate cancer." Tr. 24. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "hypertension, obesity, right shoulder arthritis, and vertigo" and that Plaintiff's allegation of carpal tunnel syndrome was not medically determinable. Tr. 24-25. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with the following additional limitations. The claimant can occasionally stoop, kneel, crouch, crawl, push or pull controls with the right lower extremity, and climb ramps, stairs, ladders, ropes or scaffolds. He should avoid concentrated exposure to hazards such as unprotected heights and dangerous moving mechanical parts.

Tr. 26. The ALJ determined that Plaintiff could perform past relevant work as a cook, fast food (DOT[3] #313.374-010) as generally performed. Tr. 28. Therefore, the ALJ concluded that Plaintiff

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

was not disabled.  Tr. 29.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal, contending that the ALJ (1) failed to resolve apparent conflicts between the vocational expert's ("VE") testimony and the DOT, and (2) failed to properly conduct a function-by-function assessment of Plaintiff's ability to perform the exertional requirements of medium work.  ECF 11, at 7-16; ECF 14, at 2-8.  Defendant counters that there was no apparent conflict affecting the ALJ's step four finding, and that substantial evidence supports the ALJ's assessment of Plaintiff's RFC.  ECF 13, at 6-17.

A claimant's RFC represents "the most [they] can still do despite [their] limitations."  20 C.F.R. § 416.945(a).  In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by function basis, how they affect [the claimant's] ability to work.'"  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  Pursuant to Social Security Ruling ("SSR") 96-8p, an RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work."  20 C.F.R. § 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work that the ALJ believes the claimant can perform.  *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021).  As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  986 F.3d at 387 (alteration in original) (citation omitted).  Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical

*William T. v. Bisignano*
Civil No. 24-1468-CDA
July 22, 2025
Page 4

bridge from that evidence to their conclusions. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Here, remand is warranted because the Court is unable to discern the ALJ's rationale for limiting Plaintiff to medium work. The ALJ acknowledged that Plaintiff testified that "he had recently been diagnosed with prostate cancer" and "alleged to have right hip arthritis." Tr. 26. Plaintiff "alleges that he is disabled because of his impairments." *Id.* The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and that "[t]he medical evidence does not entirely support the extent of the [Plaintiff's] subjective allegations." *Id.*

The ALJ observed that around the alleged onset date, Plaintiff presented to the emergency department with complaints of right hip pain, including "that he was unable to bear weight but denied having experienced any trauma." *Id.* Examination showed that plaintiff "had a positive straight leg-raising test on the right but had intact sensation and no crepitus[,]" and x-rays "showed degenerative joint disease and degenerative changes of the lower lumbar spine but did not demonstrate any acute fractures." *Id.* Plaintiff was diagnosed with right hip arthritis, prescribed Valium, Ibuprofen, and Medrol Dosepak, and Plaintiff requested a walker due to pain. Tr. 26-27.

The ALJ noted that in March 2020, Plaintiff established with a new treatment provider and "complained of right hip pain but stated that he had experienced some improvement with taking ibuprofen." Tr. 27. On examination, Plaintiff exhibited "right sided sacroiliac (SI) joint tenderness and a positive straight-leg raising test but had no vertebral tenderness and had intact sensation" and there was no mention of Plaintiff's usage of an assistive device. *Id.* Plaintiff was started on Naproxen and Prednisone and referred to an orthopedic specialist and physical therapy. *Id.* Upon examination with an orthopedic specialist, Plaintiff complained of lower back and right leg pain, stated he had been using a cane, demonstrated a limp and decreased sensation to light touch over the right thigh and calf, but had good strength. *Id.* Plaintiff was prescribed Diclofenac for pain and began physical therapy with "a plan to attend therapy sessions two times per week for a total of 16 visits." *Id.*

The ALJ observed that in June 2020, Plaintiff's "physical therapy records indicate that his pain had gotten much better" and he "reported that he had not needed to use any medication during the prior two weeks." *Id.* Plaintiff "demonstrated continued improvements in tolerance to all functional daily activities and self-care activities and reported increased tolerance to walking, standing, and stairs." *Id.* In October 2020, Plaintiff had a normal gait; in April 2021, Plaintiff had a normal gait and full motor strength; in February 2022, Plaintiff reported intermittent back pain and "his degenerative joint disease was described as stable" and he had a normal gait upon examination; and June 2022 records noted similar physical examination findings. *Id.*

Moreover, the ALJ noted that in January 2023, Plaintiff "was noted to have no gross deformities, to move all extremities well, to have full strength, and to have no tenderness upon examination"; a March 2023 examination yielded similar findings and Plaintiff also "had elevated prostate-specific antigen (PSA)"; during another March 2023 examination, Plaintiff "again was

noted to have full range of motion, no tenderness, a normal gait and normal strength and sensation"; and April 2023 records show that Plaintiff "continued to move all extremities well and have normal strength without any tenderness." *Id.* Plaintiff underwent a prostate biopsy in May 2023 and was diagnosed with adenocarcinoma of the prostate. *Id.* In July 2023, Plaintiff denied any urinary tract symptoms, and "a computerized tomography (CT) did not demonstrate any metastatic disease." *Id.*

After examining the objective evidence, the ALJ found "the evidence only partially supports the alleged loss of functioning." *Id.* The ALJ noted that Plaintiff has lumbar degenerative disc disease and right hip arthritis, but that "the medical evidence indicates that his functioning greatly improved by mid-2020 after partaking in physical therapy." *Id.* The ALJ observed that Plaintiff reported using a cane in March 2020, but that "the medical evidence does not demonstrate that an assistive device has been medically necessary" and that Plaintiff "experienced great improvement after having partaken in physical therapy." Tr. 28. The ALJ noted that Plaintiff "reported in March 2023 that he does a lot of heavy lifting and builds fences." *Id.* The ALJ acknowledged that Plaintiff was diagnosed with prostate cancer but noted that Plaintiff "denied urinary tract symptoms at a recent appointment." *Id.*

The ALJ ultimately limited Plaintiff to "medium work as defined in 20 CFR 404.1567(c) and 416.967(c)" with additional non-exertional and environmental limitations. Tr. 26. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday[.]" SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). "[S]itting may occur intermittently during the remaining time." *Id.* In medium work, "a person must be able to do both frequent stooping and frequent crouching--bending both the back and the legs--in order to move objects from one level to another or to move the objects near foot level." SSR 83-14, 1983 WL 31254, at *5 (Jan. 1, 1983). "[A]ny limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found capable of medium work." *Id.*

The ALJ must explain how the medium exertional category accurately reflects Plaintiff's physical abilities. *See* SSR 96-8p, 1996 WL 374184, at *7. However, the ALJ fails to explain why Plaintiff's impairments limit him to the specific sitting, standing, walking, lifting, and carrying demands of medium work.[4] After examining the objective evidence, the ALJ concluded

---

[4] Internal inconsistencies in the ALJ's decision further frustrate meaningful review. The ALJ noted that Plaintiff "reported in March 2023 that he does a lot of heavy lifting and builds fences." Tr. 28. Yet, Plaintiff testified that his job building fences required "a lot of lifting and pulling" and he lifted "about three to five pounds steadily every day" but that he "couldn't perform" and he "couldn't do it every day" so his employer laid him off. *See* Tr. 50-52. The ALJ failed to explain how these inconsistencies surrounding Plaintiff's ability to lift at the medium exertion level were considered and resolved. SSA regulations require the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

that the RFC assessment "is supported by the medical evidence and by the finding that [Plaintiff's] subjective allegations are not entirely consistent with the evidence of record as a whole." Tr. 28. The ALJ noted they "accounted for the full effects of [Plaintiff's] impairments, in combination, in assessing that he could perform the above listed range of medium work with the included postural activity and environmental restrictions." *Id.* But the ALJ did not support these findings with "a narrative discussion describing how the evidence supports" a medium work RFC or explain how the evidence supported each of the RFC's implicit conclusions regarding Plaintiff's ability to lift, stand, walk, sit, and carry at a medium exertional level. *See Dowling*, 986 F.3d at 387. As such, the ALJ's failure to explain how the evidence supports a limitation to medium work frustrates meaningful review.

Moreover, the ALJ's RFC assessment does not find support in any persuasive medical opinions because the ALJ did not assign persuasive value to any medical opinions that concerned Plaintiff's physical capacities. The ALJ determined that, because the state agency medical consultants "found there to be insufficient evidence to assess the claim," the consultants' statements "do not address what the claimant can still do despite his impairments and thus are not prior administrative medical findings or opinions that can be evaluated for persuasiveness" under 20 CFR §§ 404.1513(a)(5) and 416.913(a)(5). Tr. 28. As such, the ALJ's RFC assessment, which lacked a function-by-function assessment of Plaintiff's RFC, does not find support in any persuasive medical opinions. *Cf. Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (holding that an ALJ adequately supported limitations in the RFC assessment by assigning persuasive value to the opinions of doctors who addressed the limitations in detail); *Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis of her exertional limitations. Thus, the ALJ employed the legal standard set forth in . . . SSR 96-8p in [assessing] RFC.").

The Court acknowledges that the Fourth Circuit has declined to adopt a per se rule requiring remand when an ALJ fails to perform an explicit function-by-function analysis. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, if a function is "critically relevant to determining [a claimant's] disability status," remand for failure to perform such an analysis is appropriate. *Dowling*, 986 F.3d at 389. Here, the exertional requirements of medium work are relevant to the finding that Plaintiff can perform past relevant work as a cook, fast food, as generally performed, which is categorized as medium work. *See* Tr. 28-29. Upon a proper evaluation of Plaintiff's RFC, an ALJ may find that Plaintiff lacks the capacity for medium work. This finding would affect the RFC assessment and, in turn, Plaintiff's ability to perform past relevant work. Accordingly, the Court will remand this case so that an ALJ can conduct an RFC assessment that comports with SSR 96-8p.

---

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Because the ALJ's assessment of Plaintiff's RFC "was internally inconsistent," the Court's ability to trace the ALJ's reasoning is impeded, making remand necessary. *Rodney G. v. Kijakazi*, No. BAH-22-3007, 2023 WL 6465436, at *4 (D. Md. Oct. 3, 2023) (citing *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019)).

*William T. v. Bisignano*
Civil No. 24-1468-CDA
July 22, 2025
Page 7

      Because the case is being remanded on other grounds, I need not address Plaintiff's other argument. On remand, the ALJ is welcome to consider this argument and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    CONCLUSION

      For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge